IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ZACHARY J. BEERS,

                Plaintiff,

    v.                                           OPINION and ORDER

NICHOLAS KLIMPKE and                      24-cv-688-amb
AUSTIN KINAS,

                Defendants.

---

Plaintiff Zachary J. Beers, a former state prisoner, has brought 42 U.S.C. § 1983 failure to protect claims against defendant correctional officers Nicholas Kimpke and Austin Kinas, for injuries he sustained after his cellmate attacked him at Jackson Correctional Institution. The case is scheduled for trial on June 8, 2026, with a final pretrial conference scheduled for May 27 at 2:30 p.m. that, if necessary, will be continued on June 3 at 2:30 p.m.  In advance of the conference, this order circulates the court's proposed voir dire questions, jury instructions, and special verdict form as attachments and addresses the parties' motions in limine and objections to witnesses and exhibits.

OPINION

**A. Voir Dire, Jury Instructions, and Special Verdict**

Attached are draft versions of the voir dire, jury instructions, and special verdict form that the court intends to use at trial.  The court reviewed, considered, and broadly included some, but not all, of the parties' proposals.  Some language is bracketed—these are areas on which the court is directly seeking input and guidance from the parties.  The parties should

review the draft versions, including the bracketed language, and be prepared to make arguments and raise any objections or issues at the first final pretrial conference.

## B.  Motions in Limine

Plaintiff filed seven motions in limine (MILs), Dkt. 33, and defendants filed five, Dkt. 27.  These motions can be dealt with one by one for the most part, but several (plaintiff's MILs Nos. 1, 4, and 6, and defendants' MIL No. 1) pertain to the same issues regarding plaintiff's medical bills.  The court first addresses those motions that can be resolved independently and then concludes with its discussion of plaintiff's medical expenses and the related motions.

### 1.  Plaintiff's MILs[1]

#### a.  Plaintiff's MIL No. 2 – Prior Convictions

Plaintiff's MIL No. 2 asks the court to exclude any argument, evidence, or comment regarding plaintiff's previous three felony convictions, which plaintiff concedes could arguably be admissible under Fed. R. Evid. 609 but should be excluded as more prejudicial than probative under Fed. R. Evid. 403.  Dkt. 33 at 4.  Defendants did not oppose.  Dkt. 47 at 4.

Because the motion is unopposed, and the court agrees that the previous convictions are more prejudicial than probative, Fed. R. Evid. 403, the motion is GRANTED.

#### b.  Plaintiff's MIL No. 3 – Disciplinary History

Plaintiff's MIL No. 3 asks the court to exclude any argument, evidence, or comment on any disciplinary action plaintiff incurred while in prison, particularly regarding the reasons he was in segregated housing before moving into the cell with his attacker.  Dkt. 33 at 7.  The

---

[1] Plaintiff labeled his motions in limine A–G, Dkt. 33 at 3–8.  The court designates plaintiff's motions as 1–7, respectively, for consistency.

court agrees that this information generally constitutes impermissible character evidence. See Fed. R. Evid. 404(b).

Defendants do not object to excluding evidence of plaintiff's disciplinary actions in general but do seek to admit evidence that plaintiff was moved from a previous cell to the one where he was attacked and that the move was not punitive or unwanted. Dkt. 47 at 4. These points are relevant to the reasonableness of defendants' actions and thus are an appropriate carveout from the requested exclusion. *See* Seventh Circuit Pattern Civil Jury Instructions, § 7.16.

For these reasons, plaintiff's motion is GRANTED to the extent that defendants may not introduce evidence of plaintiff's disciplinary history to the extent it is offered to prove anything regarding plaintiff's character or other irrelevant purposes. Defendants may, however, illicit testimony and argue that plaintiff was moved from one cell to the cell where he was attacked, and that the move was not punitive or unwanted.

### c.  Plaintiff's MIL No. 5 – Broken Jaw

Plaintiff's MIL No. 5 asks the court to exclude evidence that his jaw was broken in some manner other than being hit by his cellmate. Dkt. 33 at 7. Plaintiff concedes that he initially told people he hurt his jaw by falling out of his bed, but he claims he only did so because he feared a retaliatory attack if he told the truth within earshot of his cellmate. *Id.* Plaintiff contends that he reported that his jaw was broken from the attack as soon as he was physically separated from his cellmate, which was sometime after the day of the attack. *Id.*

Defendants do not object to excluding argument or testimony that plaintiff's jaw was broken from falling out of bed. Dkt. 47 at 5. They do, however, request the opportunity to

impeach plaintiff about his statements regarding falling out of bed if plaintiff testifies that he told prison staff that he had been assaulted on the day of the incident. *Id.*

The court will GRANT this motion in large part. If all parties agree that plaintiff's jaw was broken by his cellmate and not by falling out of bed, the court will not allow defendants to elicit this testimony to suggest a false cause to the jury. If plaintiff testifies inconsistently about when he reported the incident, the court will take a side bar to consider the appropriateness of using this information for impeachment.

### d. Plaintiff's MIL No. 7 – Spoliation

Plaintiff's MIL No. 7 asks the court to instruct the jury that they may draw an adverse inference from the fact that defendants did not produce any "logs, notes, incident reports or 'kites' with respect to Jackson Correctional, Mr. Beers, or the cellblock in question," which plaintiff asserts would contain evidence of his requests to be moved to a new cell or other indications of his concerns regarding his roommate. Dkt. 33 at 8. Plaintiff concedes that some materials were produced in response to his initial requests, Dkt. 33 at 9, but says defendants never provided the requested logbooks or incident reports, and that defendants "mislabeled evidence to make it seem like they were producing the records for the relevant time period when in fact they were producing records from a year before the incident occurred." *Id.* at 9–10, 14. Plaintiff seeks an adverse instruction as a sanction for defendants' alleged spoliation of the documents plaintiff seeks or, alternatively, an order precluding defendants from entering evidence or arguing about the import of the missing evidence. *See id.* at 12–15.

Defendants do not object to excluding any evidence that Jackson Correctional would have a record of plaintiff's complaint that he was in fear of his cellmate if he had made such a complaint, Dkt. 47 at 5, but they do object to an adverse inference instruction, Dkt. 47 at 6.

Defendants assert they have produced all responsive information in their possession and cast doubt on whether there is any missing evidence. They reason that if plaintiff never made a complaint, there would be no recording of that complaint and nothing to produce in the first instance. This dodges the question, however. Plaintiff asked for the logbooks from the timeframe of the assault to prove the point one way or the other, and those logbooks were not produced. Instead, defendants produced a logbook from November 2022—a year before the attack. It is not clear why this older logbook was preserved and produced rather than a logbook from the relevant timeframe.

Defendants also contend that they had no duty to preserve the evidence because plaintiff's November 14, 2023, inmate complaint failed to provide sufficient notice. *Id.* at 7. While the court agrees that not "every handwritten page of documentation" associated with an inmate complaint may give rise to a reasonable expectation of litigation, *see id.*, some might, depending on the circumstances. Here, plaintiff's November 14, 2023, inmate complaint related to a serious assault that required him to have multiple surgeries. The circumstances surrounding this incident and the complaint make defendants' lack-of-notice argument somewhat specious. But their lack of bad faith argument has more purchase.

Ultimately, the court agrees that plaintiff is not entitled to an adverse inference instruction because he cannot show bad faith on the part of these individual defendants. When a party intentionally destroys evidence in bad faith, the judge may instruct the jury to infer the evidence contained incriminatory content. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008). When considering the propriety of such an instruction, the crucial element is not that the evidence was destroyed but rather the reason for the destruction. *Bracey v. Grondin*, 712 F.3d 1012, 1018–19 (7th Cir. 2013). A party destroys evidence in "bad faith" when they

destroyed it for the purpose of hiding adverse information. *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998). The party asking for the instruction bears the burden of providing the elements, and the burden cannot be met with speculation. *Bracey*, 712 F.3d at 1019. Negligent destruction of evidence falls short of the bad faith. *Id.* at 1020.

Plaintiff asks the court to infer bad faith, but there is not enough here for the court to reasonably do so. It is not clear why the November 2023 logbook and incident reports are missing from the record. Perhaps they never existed, perhaps they were lost or destroyed in the ordinary course, or perhaps they were not collected and produced because the wrong year was pulled and mislabeled. It was plaintiff's burden to develop this record, but he has not. Plaintiff argues that he propounded discovery requests and received deficient responses. In that case, plaintiff should have moved to compel. Likewise, if he believed defendants produced erroneous information in the form of a logbook from the wrong year, that is something that should have been raised first in a meet and confer and later in a motion to compel, if necessary. If this had been raised sooner, perhaps it could have been cured.

Although the court is denying the request for an adverse inference instruction, it will grant plaintiff's alternative request to exclude testimony about the lack of any paper record of plaintiff making a complaint about his cellmate. Because defendants failed to produce a logbook or reports from the November 2023 timeframe, and they haven't provided an explanation for this failure, the court will not allow them to suggest or argue that the missing paper trail means no complaint was ever made. Witnesses can offer their own testimony on whether plaintiff voiced concerns ahead of the assault, and the jury can make their own credibility determinations and draw their own conclusions.

For these reasons, and along these lines, plaintiff's MIL No. 7, Dkt. 33 at 9, is GRNATED in part and DENIED in part.

### 2. Defendants' MILs

#### e. Defendants' MIL No. 2 – Indemnity

Defendants' MIL No. 2 asks the court to exclude any reference to who will ultimately pay any judgment assessed against defendants.  Dkt. 27 at 4.  Plaintiff responds that he does not intend to introduce such evidence unless defendants open the door to it.  Dkt. 41 at 2.

This information is irrelevant and unduly prejudicial, Fed. R. Evid. 401, 402, 403, possibly to both sides, and thus the motion is GRANTED.

#### f. Defendants' MIL No. 3 – Prior Failure-to-Protect Allegations

Defendants' MIL No. 3 asks the court to exclude any testimony regarding previous failure-to-protect allegations against defendants as impermissible other-act evidence under Fed. R. Evid. 404(b).  Dkt. 27 at 5.

Plaintiff responds that he plans to offer evidence that plaintiff's attacker assaulted several other inmates, including a different white cellmate in May 2023 at Jackson Correctional, which he posits will show defendants knew of the cellmate's violent past.  This does not strike the court as an objection to defendants' motion, which is concerned with allegations against defendants, not plaintiff's cellmate.

Because plaintiff does not meaningfully object, and the court sees no permissible purpose for introducing evidence of other failure-to-protect allegations, Fed. R. Evid. 404(b), defendants' motion is GRANTED.

### g. Defendants' MIL No. 4 – Other Proceedings, Grievances, and History

Defendants' MIL No. 4 asks the court to exclude reference to the details of other legal proceedings involving defendants, inmate grievances against them, except those from plaintiff related to this case, and defendants' personnel file work history. Dkt. 27 at 6. Plaintiff responds that he does not intend to "offer any evidence that these defendants have been sued for failing to protect other inmates unless defendants open the door to such impeachment." Dkt. 41 at 2.

Because plaintiff does not meaningfully object, and the court sees no permissible purpose for introducing evidence of other proceedings or grievances, Fed. R. Evid. 404(b), defendants' motion is GRANTED.

### h. Defendants' MIL No. 5 – Lawsuits against Department of Corrections and Employees

Defendants' MIL No. 5 asks the court to exclude reference to the details of any other lawsuits against the Department of Corrections and its current or former employees. Dkt. 27 at 8. Plaintiff does not object. Dkt. 41 at 2. This information is not relevant, Fed. R. Evid. 401, and the motion is GRANTED.

### 3. Medical Expenses

Both plaintiff and defendants filed MILs pertaining to the $158,506.63 in medical expenses generated by plaintiff's treatment at several facilities following the attack. Broadly put, plaintiff wants to introduce evidence of the dollar amount of the expenses, and defendants wish to preclude such evidence. Plaintiff advances two theories of admissibility. First, that he incurred expenses and thus they are relevant to assess out-of-pocket expenses as part of compensatory damages. Second, even if the court does not find that he personally paid for his

treatment, that the "collateral source rule" would prohibit the defendants from showing at trial that the State paid his bills. Defendants argue that, because plaintiff was a prisoner, the State, through both the Department of Corrections and the Department of Health Services through state Medicaid, covered his medical expenses, and that payments made by or on behalf of the State are not sufficiently collateral for the collateral source rule to apply. The court addresses plaintiff's arguments in turn.

The central issue underlying the MILs is a dispute over who—plaintiff or the State—paid for the expenses. If plaintiff paid for the expenses himself, they could be relevant to assessing compensatory damages. *See* Seventh Circuit Pattern Civil Jury Instructions, § 7.26 (listing as a consideration "The reasonable value of medical care and supplies that Plaintiff reasonably needed and actually received"). Plaintiff does not provide evidence that, on its face, shows he paid the $158,506.63 out-of-pocket. Instead, he contends that there is no evidence that defendants or the State paid his medical bills, thereby inviting the inference that he did. Dkt. 33 at 3. To support that contention, plaintiff points to several requests for admission (RFAs) asking defendants to admit that plaintiff "incurred the charges listed." *See* Dkt. 34-1 at 5–8. Plaintiff reports that defendants did not answer these requests to admit, and so, under Fed. R. Civ P. 26(3), the court must find the requests admitted. Dkt. 33 at 3.

Even taking the requests as admitted, the court does not read them as admissions that plaintiff himself paid for the expenses. The RFAs ask defendants to admit that plaintiff "incurred" the expenses listed in the bills, but plaintiff incurring a charge does not mean that plaintiff actually paid. To this point—defendants represent that, as a state prisoner, "much or all" of plaintiff's expenses were paid for by the State through the Wisconsin Department of Corrections and Wisconsin Department of Human Services through the State Medicaid

program. Dkt. 27 at 2. As written, the court does not find the RFAs support plaintiff's contention that he paid for his medical care himself, so his first theory of admissibility fails.

Alternatively, plaintiff argues that, even if the court sides with defendants on the import of the RFAs, evidence the State paid for plaintiff's treatment is inadmissible under the collateral source rule. Under Wisconsin's collateral source rule, "benefits an injured person receives from sources that have nothing to do with the tortfeasor may not be used to reduce the tortfeasor's liability to the injured person." *Leitinger v. DBart, inc.*, 2007 WI 84, ¶ 26, 302 Wis. 2d 110, 123, 736 N.W.2d 1, 7. Plaintiff argues that the State is a collateral source and, as such, that he is allowed to recover the value of his medical expenses from defendants even though he did not pay for them. Dkt. 33 at 3.

The court is not convinced that the State of Wisconsin is sufficiently collateral to defendants for the rule to apply in this case. This court's previous decision in *Dawson v. Great Lakes Educ. Loan Servs.*, No. 15-cv-475-jdp, 2021 WL 1174726 (W.D. Wis. Mar. 29, 2021) is instructive here. There, the plaintiff argued that the collateral source rule applied to refunds and credits that were applied to her loan balance because the credits came from the federal government, and not from the defendant loan servicer.

The court rejected that argument for three reasons, all of which are relevant to this case. First, the policy behind the collateral source rule is that "the tortfeasor should not be permitted to reap the benefits of the plaintiff's foresight in obtaining coverage for future harm or his good fortune in obtaining compensation gratuitously." *Molzof v. United States*, 6 F.3d 461 (7th Cir. 1993). The credits the plaintiff in *Dawson* received were not the result of her foresight or good fortune; instead, they were the direct result of the servicer attempting to correct its own mistakes. Here, plaintiff's medical bills were, presumably, paid by the State because he was a

10

prisoner, not because of any choice he made. That also distinguishes plaintiff's case from *Guiffre*, which he cites, as the court there found the plaintiff earned his medical insurance as part of the employee benefits package extended to city employees. *See Giuffre v. Jefferson*, No. 14 C 3692, 2017 WL 1375536, at *3 (N.D. Ill. Apr. 17, 2017).

Second, the credits and refunds issued by the federal government were not from a "collateral" source in a meaningful sense. The collateral source rule does not apply when the plaintiff receives a payment from "someone identified with the tortfeasor," such as the tortfeasor's insurer. *See Leitinger*, 2007 WI 84, ¶ 26. In *Dawson*, this court concluded that the federal government was "identified" with the loan servicer because of their contractual relationship. Here, plaintiff's bills were paid for by the employer of defendants, the State of Wisconsin, so payment for his medical bills did not come from a meaningfully "collateral" source.

Finally, the collateral source rule "ordinarily works in tandem with the legal principle of subrogation." *Weborg v. Jenny*, 2012 WI 67, ¶ 47, 341 Wis. 2d 668, 688-89, 816 N.W.2d 191, 201-02. To prevent a prevailing plaintiff from becoming unjustly enriched, the third party who made payments to the injured party has a right of recovery against the tortfeasor, either by being joined as a party to the tort action or by seeking reimbursement from the prevailing plaintiff. *See id.* In *Dawson*, there was no subrogated party and no mechanism for the debt owner to obtain "reimbursement" from plaintiffs if they received a double recovery. Here, the State is not a subrogated party, and neither party has suggested a mechanism by which it may obtain "reimbursement" from plaintiff.

The above points mainly focus on the lack of relevance the medical bills have to this case. But beyond that, the court is also concerned with the likely undue prejudice the bills

11

may have on the jury's deliberations. If the jury reaches the question of compensatory damages, the jurors must consider "the amount of money that will fairly compensate Plaintiff for any injury . . . he sustained," including "physical and mental aspects of injury, even if they are not easy to measure." *See* Seventh Circuit Pattern Civil Jury Instructions, § 7.26. Hospital bills may inform this inquiry in cases where they show out-of-pocket expenses, but as explained above, that is not the case here. Also, hospital bills may reflect expenses driven by considerations beyond any underlying injury. Likewise, they are not necessarily good measures of wholistic injury, including mental injury. At worst, the bills may have an inappropriate anchoring effect and hold outsized sway over the jury's deliberations. So, on top of the problems discussed above, there is concern for confusion and undue prejudice. *See* Fed. R. Evid. 403.

If plaintiff seeks to introduce or adduce evidence of medical expenses that he personally paid, the court will consider the admissibility of that evidence independent of this order. For now, for the reasons detailed above, I grant and deny the parties' relevant MILs as follows:

- Plaintiff's MIL No. 1, Dkt. 33 at 3, asking the court exclude any argument, evidence, or comment on the fact that plaintiff's medical expenses were paid by a third party, is DENIED as moot—the pertinent expenses will not be in evidence.

- Plaintiff's MIL No. 4, Dkt. 33 at 7, asking the court to instruct the jury that $158,506.63 is the reasonable and necessary cost of the medical care received by plaintiff as a result of his injuries, is DENIED.

- Plaintiff's MIL No. 6, Dkt. 33 at 8, asking the court to order that there is no question as to the authenticity or admissibility of the medical records and bills included in plaintiff's exhibit list, is DENIED.

- Defendants' MIL No. 1, Dkt. 27 at 1, asking the court to exclude any argument, questions, testimony, or evidence related to, and barring plaintiff from recovering, medical expenses paid for by the State of Wisconsin as an item of compensatory damages, is GRANTED insofar as the court is excluding evidence of the bills at issue.

## C.  Trial Exhibits and Witnesses

The court makes the following rulings on exhibits and witnesses and will address the remainder of the parties' objections during the final pretrial conference.

Defendants did not file any response to plaintiff's witness list, and, regarding exhibits, objected only to plaintiff's Exhibits Nos. 12–14, Dkt. 29, which detail the medical expenses generated by plaintiff's treatment following the attack.  Dkt. 46 at 2.  These exhibits are discussed in the previous section regarding plaintiff's medical expenses.  Having granted defendants' MIL No. 1 excluding evidence relating to medical expenses paid for by the State, the court SUSTAINS defendants' objections to plaintiff's Exhibits Nos. 12–14.

Plaintiff objects to defendants' Exhibit No. 501, "Report on Wisconsin DOC Medical Billing and Bills Paid on Behalf of Plaintiff Zachary Beers," and to defendants' witnesses Robert Jolin and Kiah Grah, who, if called, would identify defendants' Exhibit No. 501 and/or testify about the medical bills the State paid for on plaintiff's behalf.  Dkt. 25.  Plaintiff objects to the exhibit and witnesses on the grounds that they were not disclosed as part of Rule 26 initial disclosures nor during discovery in response to a request for production.  Dkt. 42 at 1–3.

Beyond that concern, this exhibit and these witnesses appear to fall within defendants' own MIL No. 1, which asked the court to exclude "any argument, questions, testimony, or evidence related to . . . medical expenses paid for by the State of Wisconsin as an item of compensatory damages."   In light of that, the court SUSTAINS plaintiff's objections to defendants' Exhibit No. 501 and the witnesses who are called solely to testify to that exhibit. The court will inquire whether these witnesses may offer other relevant testimony at the final pretrial conference.

ORDER

IT IS ORDERED that:

1.  Plaintiff's MILs Nos. 2 & 3, Dkt. 33 at 4, 7, are GRANTED in line with this opinion.

2.  Plaintiff's MILs Nos. 1, 4, & 6, Dkt. 33 at 3, 7–9, are DENIED.

3.  Plaintiff's MIL No. 7, Dkt. 33 at 9, is GRANTED in part and DENIED in part.

4.  Defendants' MILs Nos. 1–5, Dkt. 27 at 1–8, are GRANTED in line with this opinion.

5.  Plaintiff's objections to defendants' Exhibit No. 501 and to witnesses called solely to testify to that exhibit, Dkt. 42 at 1–3, are SUSTAINED.

6.  Defendants' objection to plaintiff's Exhibits Nos. 12–14, Dkt. 46 at 2, are SUSTAINED.

Entered May 22, 2026.

BY THE COURT:

/s/

_____
ANITA MARIE BOOR
Magistrate Judge

14